'bursements paid out by the plaintiff in its management.   In Muller v. Pondir, 55 N. Y. 325, 14 Am. Rep. 259, it was said by Judge Allen:

"An agent may have a lien on the property of his principal for moneys advanced or liabilities incurred in his behalf; and, if moneys have been advanced or liabilities incurred upon the faith of the solvency of the principal, and he becomes insolvent while the proceeds and fruit of such advances or liability are in the possession of the agent, or within his reach, and before they have come to the actual possession of the principal, within every principle of equity the agent has a lien upon the same for his protection and indemnity.   If necessary to his protection, the plaintiff would have been permitted to repudiate the agency, and assume that position which would best protect himself from loss by reason of the insolvency of his principal."

The evident reason why the lien is given is that by the expenditure made and liabilities assumed the agent has benefited the principal, and protected the fund, or, at least, improved the principal's condition. As the irresponsibility of the principal would defeat the right of the agent in securing reimbursement, equity raises out of such situation for his protection a lien upon the fund.   It must follow, therefore, that whenever a condition exists which would cause loss to the agent if he parted with the funds in his hands, equity will interpose so far as to protect the agent's right in the premises, and raise out of the condition a lien upon the fund.   The complaint avers that the defendants are residents of England, and that, if he parts with the possession of the money, it will be removed beyond the jurisdiction of the court and its process.   In such case the same reasons exist for supporting a lien upon the fund as would exist in the case of insolvency.   It seems clear, therefore, that this complaint states a perfectly good cause of action for equitable interposition.

It follows that both the final and interlocutory judgments should be reversed, with costs to the plaintiff in this court and in the court below, and leave given to the defendants to answer within 20 days, upon the payment of such costs.   All concur; VAN BRUNT, P. J., on first ground stated in opinion.

---

(72 App. Div. 132.)

SHEPARD v. MANHATTAN RY. CO. et al.

(Supreme Court, Appellate Division, First Department.   May 9, 1902.)

1. STREET RAILROADS—ACQUISITION OF STREET RIGHTS — DAMAGES RECOVERED BY ABUTTING OWNER — TRUST IN FAVOR OF FORMER OWNER — RESERVATIONS IN DEED—PROCEDURE TO ENFORCE TRUST.

A deed reserved to the grantor all claim or right of action against an elevated railroad company for damages to the property conveyed by reason of the construction, etc., of its road.   The grantee obtained a judgment for such damages, and the grantor thereafter sued the grantee, and obtained a decision that such recovery was impressed with a trust for his benefit, but not determining his and the grantee's respective interests therein.   Held that, the grantee having an interest in the recovery to the extent of the costs of obtaining it, and possibly being entitled to it all, and being well worth any judgment which might be rendered against him in the grantor's action, the grantor was not entitled to an order restraining the railroad company from paying the grantee his recovery, and requiring such recovery to be paid into court to abide the decision in the grantor's action, but on giving a bond conditioned to indemnify the grantee for loss of the use of his recovery, etc., the gran-

tor might apply for an injunction to restrain the payment of the money
to the grantee.

**2. SAME—DEED BY OWNER TO RAILROAD.**

Where a deed reserved to the grantor all claim or right of action
against an elevated railroad company for damages to the property con-
veyed by reason of the construction, etc., of its road, and the grantee
thereafter obtained a judgment for such damages, and a controversy
resulted as to who was entitled to the recovery, the grantee, having the
legal title to the property, could make the usual conveyances, releases,
etc., to the railroad company as fully and completely as though there
were no controversy about the recovery.

Appeal from special term, New York county.

Action by Augustus D. Shepard against the Manhattan Railway
Company and another. From an order requiring defendants to pay
plaintiff's recovery into court, and that plaintiff make certain re-
leases, etc., he appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-
LIN, PATTERSON, and INGRAHAM, JJ.

W. G. Peckham, for appellant.

Rush Taggart, for respondents.

HATCH, J. The record in this case discloses a peculiar and novel
condition. The plaintiff in the action was the owner of abutting
property on the street in which the defendants constructed, maintain-
ed, and operated their elevated railroad. The plaintiff brought his
action to recover damages for the appropriation by the railroad of
his property rights in the street, and succeeded in recovering there-
for, as rental and fee damages, a sum in excess of $100,000. This
judgment was carried through all the courts, and was finally af-
firmed in the court of appeals, by which affirmance the defendants
were required to pay the sum of money secured to be paid by the
judgment of affirmance, and the plaintiff upon such payment was
required to execute and deliver a conveyance of the property rights
appropriated by the defendants. This was a final judgment of the
court of last resort, and, as between these parties, it finally and con-
clusively fixed their respective rights, which were that the defendants
must pay the sum secured to be paid within a specified time, or be
enjoined from the maintenance and operation of their railroad,
and the plaintiff was required, upon tender of the sum awarded as
his damages, to execute the conveyance. It is evident, therefore,
that extraordinary conditions must exist in order to justify the su-
preme court in interfering with the enforcement by the plaintiff of
his judgment, as, by such result, the plaintiff is deprived of the fruits
of a protracted and hotly-contested litigation, made necessary by
the defendants' trespass. The alleged extraordinary circumstances
out of which proceeds this exercise of power now invoked are found
in the following facts:

The property which was the subject of the action was originally
owned by the Western Union Telegraph Company. On June 4,
1883, this company transferred the property by deed to George W.
Tubbs, and by a clause contained therein reserved certain rights in
the following language:

"The party of the first part hereto reserved all claim or right of action against the Manhattan and Metropolitan Elevated Railroad Companies, or either of them, for any and all injury or damage done to the aforesaid property, or to the value or uses thereof, in the past, present, or future, by reason of the construction and operation of the elevated railroad in front of the said premises as it is now constructed and operated."

Through several mesne conveyances the title to the property became vested in J. N. and L. N. Levy, who conveyed the same to the plaintiff in this action. In the deed to the plaintiff was contained a reservation in these words:

"Damages to said premises arising by reason of the elevated railroad as now constructed and operated in front of said premises has been reserved to the Western Union Telegraph Company, a former owner."

Upon the trial of this action the railroad company moved to dismiss the complaint upon the ground that the cause of action, if any, was not vested in the plaintiff therein, but was owned by the Western Union Telegraph Company, by whom alone the claim could be enforced. The trial court, as have all the other tribunals who have examined this question, rejected such claim, holding that the easements were appurtenant to the property, and passed with the fee; that they could not be severed therefrom; and that the right to recover for an invasion thereof became vested in the owner of the fee, and could only be enforced by him. Shepard v. Railroad Co., 169 N. Y. 160, 62 N. E. 151. Subsequent to the bringing of this action the Western Union Telegraph Company brought an action against the plaintiff, making parties thereto the grantee, Tubbs, all other mesne holders of the title after conveyance to him, and the defendant the Manhattan Railroad Company. By the complaint in this action the Western Union Telegraph Company sought to impress a trust upon the funds which might be recovered in the plaintiff's action against the railroad company.

The complaint stated all the facts connected with the transaction, and demanded relief, among other things, that the plaintiff and the defendant railroad be enjoined from making any settlement of such action, or of paying the money, or in any manner compromising the same; that the defendant Shepard be declared to be a trustee for the plaintiff in the action, and that he be compelled to pay to it all money which he might recover in his action. The Western Union Telegraph Company, by petition, sought to intervene as a party in the action of Shepard against the Manhattan Railroad Company before the trial of the same, but the motion was denied (Shepard v. Railroad Co., 82 Hun, 527, 31 N. Y. Supp. 537, affirmed on appeal, 147 N. Y. 685, 42 N. E. 726), and motion for reargument of the same was thereafter denied (Id., 147 N. Y. 713, 42 N. E. 726). Thereafter the Western Union Telegraph Company brought its action to trial, when the complaint was dismissed, and upon appeal to the appellate division the same was affirmed. 49 App. Div. 345, 63 N. Y. Supp. 435. On appeal to the court of appeals the judgment entered thereon was reversed. 169 N. Y. 170, 62 N. E. 154. By this last decision it was determined that, while a grant of land carries with it all the easements and the right to recover damages for an invasion of

the same, yet where there has been a reservation of the damages for the invasion of such easements by a former grantor, the owner of the fee, as to such grantor, occupies the position of a trustee, and that equity will decree a recovery against him, as trustee, for the reserving grantor. As we understand this case, it clearly determines that the effect of such a reservation as was contained in the deed of the Western Union Telegraph Company, in the absence of all other considerations, was to vest in it the equitable right to the moneys recovered; and that Shepard, as owner, became, by operation of law and the effect of the reservation, a trustee for such company. It is noticeable, however, that the court of appeals, while laying down this rule as a general proposition, did not assume to determine as an absolute rule of law, under the circumstances of this case as they might be developed upon the trial of the action, that the Western Union Telegraph Company would necessarily take the whole of the recovery, or any part of it. On the contrary, it was expressly recognized that the damages recovered by Shepard might be the subject of apportionment between the Western Union Telegraph Company and Shepard, and it was for that reason that the court granted a new trial. It is plain, therefore, that the court contemplated that a state of facts might be developed whereby it would be shown that the Western Union Telegraph Company ought not to have or take anything upon the fair application of equitable rules. In any event, Shepard, as trustee, is entitled to retain from the recovery a reasonable allowance for costs and expenses incurred in its production, and such right includes the reasonable fees paid or agreed to be paid to attorney and counsel in the litigation which has resulted in producing the fund. Woodruff v. Railroad Co., 129 N. Y. 27, 29 N. E. 251.

The court of appeals had under consideration only the averments in the complaint and the reservations contained in the respective deeds set out therein. The court held that the averments of the complaint were to be so construed as to equitably secure to the telegraph company some of the moneys, at least, which might be recovered in Shepard's action. It is clear, however, that, after the telegraph company parted with its title to the premises, it could not be damnified for any loss of rents which was thereafter suffered, as it was not the owner nor entitled to the occupancy of the premises, nor of any rents which might be produced therefrom. The owner of the property became legally entitled thereto, and they could not be severed from his beneficial ownership by any reservation which might be made. The court of appeals, in its decision construing the complaint of the telegraph company, has not passed upon such question, and we are at a loss now to see how the telegraph company has any beneficial interest in the damages which have been recovered for loss of rents after such company conveyed away its title to the premises. It is noticeable also that the telegraph company nowhere in its complaint avers in terms that the reservation was based upon any consideration, or that there was deducted from the purchase price of the property any sum on account thereof. On the contrary, it stands squarely on the language of the reservation itself, and the inferences that arise therefrom. In the answers of the subsequent

grantees of the property, who conveyed to Shepard, it is averred that the value of the easements was excluded from the purchase price paid by Shepard for the property; but these grantees have no interest in such question, as they have not reserved to themselves any rights in the property of any description. The contest over the fund is between the telegraph company and Shepard and those interested therein with him. How far, and to what extent, these subjects may be considered in apportioning the funds according to the respective rights of the parties, it is not now necessary for us to determine, as all the facts necessary to settle the respective rights are not now before us. Consequently we express no opinion thereon.

In Shepard's action against the railroad, judgment was entered upon the remittitur on the 24th day of December, 1901, and the time within which the defendant railroad company was required to make a tender of the sum required to be paid thereunder for the conveyance expired on the 13th day of January, 1902. On December 27, 1901, the Western Union Telegraph Company obtained an order to show cause why the moneys which were collectible from the railroad company should not be paid into court in its action, to abide the further action and decree of the court with respect thereto. Such order also contained an injunction restraining Shepard, his agents, attorneys, and employés, from taking steps to enforce the judgment, or to receive the money thereon, and also restraining the defendant railroad, its agents and employés, from paying the same, or taking other steps to procure a satisfaction thereof. It is claimed by the telegraph company that it is entitled to impound this money, as the equitable owner thereof, and to restrain payment of the same to its trustee, Shepard. It is claimed by the latter that, notwithstanding the decision of the court of appeals, he is not only the legal, but the equitable, owner of the fund in question, and is entitled to have and receive the same; and that, even if he be treated as a trustee, yet he is a man of large means, and financially able to respond to the telegraph company for any interest it may have in the fund; and that, as it is admitted that he is legally entitled to the custody of the money, and has a judgment directing its payment to him, the court not only ought not to impound it, but has no power so to do. The defendant railroad company is ready, willing, and desirous of paying the judgment to whomsoever the court shall adjudge that it shall be paid; and it is anxious to make such payment in order to stop accumulation of interest. As at present situated, however, it is liable to an injunction restraining the operation of its railroad by virtue of the judgment if it does not satisfy the same, and, if it does, is subject to punishment for contempt in violating the injunction order of the court restraining it from paying. It is manifest, therefore, that the railroad company should have some measure of relief from the upper and nether millstone of judgment and order. We do not think, however, in view of these facts and the attitude of the respective parties, that the present order should be sustained.

The discussion already had is sufficient to show that Shepard has a substantial interest in this fund, as has also his attorney, even though it be finally adjudicated that the recovery belongs to the telegraph

company, or it may be that he will eventually establish his right and title to the whole thereof. Under such circumstances, we think he ought not to be placed in a position where he will suffer loss. If the money be paid into court, it is in defiance of the term of the judgment, which directs its payment to him; and, whether he be a trustee or not, it is undisputed from the record in this case, nor is any claim otherwise made so far as we are aware that he is not abundantly responsible to answer to the telegraph company for the amount to which it shall show itself entitled. If the money be paid into court, it amounts to a very great reduction of its earning power, and Shepard is entitled by his judgment to receive this money, or have it so placed that there will be no diminution of earning power to the extent that he has interest therein. It is clear that the telegraph company can easily protect itself from any liability for loss by procuring an injunction in its action restraining the payment of the money over to Shepard. Under such an application it will be required to give a bond which would indemnify Shepard for any losses which he might sustain by reason of his failure to receive the money under the judgment which he has obtained. The telegraph company ought equitably to assume this burden of indemnity. It runs no risk. If it be entitled to the fund,—which is the only basis upon which its action can be maintained,—it will suffer no loss by reason of its bond of indemnity. If it be not so entitled then it should indemnify Shepard from loss. Such rule will equitably distribute the burdens between the telegraph company and Shepard. As to the railroad company, it should be permitted in that action to pay the money into court, and thus relieve itself from the further accumulation of interest, and thereby become entitled to receive the conveyance. It is to be borne in mind, in reaching this conclusion, that Shepard has a final judgment entitling him to receive this money. The telegraph company has no judgment. It simply asserts a claim to the fund, and the adjudication which has been had does not conclusively establish that it is entitled to judgment, or can enforce its claim. The most that can be said is that it has procured an adjudication showing that it may be entitled to a part of the fund. It is clear that it cannot be entitled to the whole, as it is subject to the charges as we have already pointed out. Under such circumstances we think it is the party litigant who should furnish the indemnity for the protection of all the parties before the court should lay hold of this fund. We do not doubt the power of the court to impound the money for the protection of all the parties, but the power ought not to be exercised unless the claimant furnish ample indemnity. It is clear that when Shepard executes the usual conveyance as owner of the property, the railroad company will have acquired all that it is entitled to demand. No other parties have any interest therein, nor is any release required from the telegraph company under the decision of the court of appeals. Shepard has the legal title, and can convey the same to the railroad as fully and completely as though there were no claimants of the fund aside from him.

It follows from these views that the order should be reversed, with $10 costs and disbursements, and the motion denied with $10 costs, but without prejudice to the right of the Western Union Telegraph

Company to make application for an injunction in the form and manner prescribed by law. The stay, however, which has been granted, will be continued for 10 days from the entry of the order herein to allow the telegraph company to make its application if it be so advised. All concur; McLAUGHLIN, J., in result.